## The Township of Dickinson *versus* Linn.

School directors, who vote for a misapplication of the public funds, in payment of a teacher for a period during which he was not employed by the public, are personally liable to the township for the amount so misappropriated.

The treasurer of the school fund, who was also a school director, and voted in favour of such payment, cannot shield himself from liability under the warrant of the board of directors.

The maxim *respondeat superior* furnishes no protection to one who is both subordinate and superior.

ERROR to the Common Pleas of *Cumberland county*.

This was an appeal to the court below, by Joseph Galbreath, a resident and tax-payer of the township of Dickinson, from the settlement of the account of Robert Linn, the treasurer of the school fund of the said township, by the township auditors. The principal matter complained of was the allowance of a credit for $125, paid to Samuel M. Kenyon, for services as a teacher, which it was alleged were never rendered to the township. The court below directed an issue to be formed, in which The Township of Dickinson should be plaintiff, and the said Robert Linn the defendant, for the trial of the matters of fact involved in the appeal.

Robert Linn, the defendant in the issue, was a member of the board of school directors, and also the treasurer of the school district. On the 27th December 1856, an official notice was sent to Samuel M. Kenyon, the teacher in charge of the Savannah school-house, in the said district, which he publicly posted, with his comments endorsed thereon, as follows :—

*Pro bono.* | December 27th, 1856. | *publico.*

Samuel M. Kenyon, Esq. teacher of Savannah school you are hereby instructed to receive no pupils into your school from David Shoups or R. Fishburns, the new school house at Henry Lines being much nearer for them, they are hereby instructed to send there.

By order of the Board,
ADAM COOVER, Secretary. STEPHEN F. WEAKLEY, President.

| | |
|---|---|
| *Nota Bene.* The board of Directors did not employ *me* to act out their spite, but to teach a FREE school. Respectfully S. M. KENYON. | F—ls never bite But will *spit out* their spite in Dickinson. |

The directors, deeming this an act of gross insubordination, discharged Kenyon, by a resolution of the board, on the 28th February 1857. He still, however, continued to teach in the same place, with the understanding that he should be paid by the parents of the children, in case the school directors should refuse to pay him. Several unsuccessful efforts were made in the board of directors to obtain the passage of a resolution for the payment of Kenyon's salary; and on the 5th June 1858, the subject was again brought before the board, when there were but five members present, and a resolution was adopted, by the casting vote of the defendant, to reinstate Samuel M. Kenyon, and to pay him his salary for teaching at the Savannah school-house for five months. On the same day, an order was drawn in his favour for $125, which was presented to and paid by the defendant. The township auditors allowed him a credit for this payment.

The court below (GRAHAM, P. J.) delivered the following charge to the jury:—

"This case comes before us by an appeal by Joseph Galbreath, a resident tax-payer of Dickinson township, from the settlement of the account of Robert Linn, treasurer of the board of school directors, by the township auditors. There are some errors and mistakes made by the auditors, for and against the accountant, which are admitted, and which you will correct. The only item about which there is any controversy in the settlement made by the auditors, is an order drawn by the president and tested by the secretary of the board, on the treasurer, in favour of Samuel M. Kenyon, Esq., for $125, dated 5th June 1858, which was paid by Mr. Linn, the treasurer, and allowed by the auditors. This order was drawn and paid by the treasurer under the following circumstances:—

"Robert Linn, the defendant, was a member of the board of school directors, and also treasurer of the school district. Samuel M. Kenyon, who had charge of the Savannah school-house, or school-house No. 9, was discharged as teacher by resolution of the board the 28th February 1857. It appears that after his discharge as a teacher by the school board, he continued to teach at the same place at the instance of those who had sent their children to this school, and with the understanding, that if he was not paid by the school directors, those who sent their children to the school would pay for their tuition. On the 25th April 1857, there was a resolution introduced to pay Kenyon for tuition after he had been discharged, which was lost by a tie vote. On the 29th August 1857, there was a resolution offered to reinstate the Savannah school-house where Kenyon had taught, which was again lost by a tie vote. Again, on the 26th March 1858, another resolution was introduced to pay Kenyon, which was again lost by a tie vote. The school board of 1857 appear to have been equally

divided on the question of paying Kenyon, and it appears to have been frequently agitated and brought to the notice of the board, and resulted in an equal division, until after the spring election of 1858, when the subject was again brought before the board of directors, and on the 5th June 1858, a resolution was passed to reinstate Samuel M. Kenyon as a teacher in the Dickinson district, and to pay him his salary for teaching at the Savannah school-house for five months.  This resolution was carried by a vote of 3 to 2, Mr. Linn voting in the affirmative.  On the same day, as appears from the minutes of the board, an order on the treasurer was drawn in favour of Kenyon for $125, in due form, signed by the president and attested by the secretary.  This order, thus drawn under the circumstances we have stated, the township alleges was illegal, and ought not to have been paid by the treasurer of the school board; that the township auditors erred in passing this order to the credit of the treasurer, and this appeal from their settlement has been entered to correct this alleged error.

"The facts are not controverted, and the question raised upon the facts we have stated is one of law for the court to determine. The 16th section of the Act of 1854 makes it the duty of the treasurer to pay 'all orders of the board signed by the president and attested by the secretary.'  The superintendent, in his decisions and explanatory instructions to the directors and officers under the school laws, issued in 1857, p. 65, holds that 'a treasurer has no right to go behind a school order to inquire into its legality; if it be right upon its face, and signed by the president and attested by the secretary, he must promptly pay it, without inquiry or objection, upon presentation by the rightful holder.'  The treasurer is not a judicial but a ministerial officer. He is not the censor of the directors, by whom he is appointed, nor is it his province to pass upon the legality or propriety of their acts.  The duty of the township auditors is simply ministerial.  In auditing the account of the treasurer, their duty is to debit him with the district tax, state appropriation, and other funds received, and credit him with payments upon orders drawn in due and proper form by the president and secretary, but it was not intended to constitute the auditors a tribunal to pass upon the legality of the payments ordered by the directors.

"If the directors are guilty of misfeasance or malfeasance in office, by which a loss occurs to the township, either by neglecting to take security from their treasurer or collector, or by misapplying the school funds to improper and illegal objects, as alleged in this case, the remedy against them is by action on the case at common law, and not by visiting their delinquencies upon their treasurer by holding him responsible for payments made upon orders drawn in exact conformity with the Act of Assembly.  In

[The Township of Dickinson *v.* Linn.]

this case, the township has mistaken its remedy, and the treasurer is entitled to a credit of $125, paid to Kenyon on the order of the board signed by the president and secretary.

"Whether the payment of Kenyon by the board of directors in 1858, for services rendered after he was dismissed by the board in 1857, and for which the board of 1857 refused to pay him, was legal or illegal, is not now before us, or whether the members of the board who voted to pay him for five months' tuition out of the school fund, including the defendant, Robert Linn, would be personally liable to the township for the amount thus appropriated, in a suit against them by the township, is not the question now presented. Although Robert Linn, as a director, might be liable with other directors for a misappropriation of the school fund, he cannot be charged as treasurer for his malfeasance as a director, by refusing to credit him in the settlement of his account as treasurer, with orders drawn upon him, signed and countersigned by the president and secretary.

"If this case turned upon the legality of the payment of Kenyon for five months' tuition in 1857, after he had been discharged as a teacher, we do not consider the illegality of that payment, under the circumstances it was made, so palpable as assumed by plaintiff's counsel. Although dismissed by the board, he continued his school in the same house, and taught, we presume, the same children, under a promise of payment by those who sent their children to the school, if not paid by the school directors. The question of payment was brought before the board at three different times, from April 1857 to March 1858, and was defeated by a tie vote. But after the election, in 1858, to wit, in June 1858, the directors wished to reinstate Kenyon as teacher in the Dickinson district, and pay him for the five months he had taught in the Savannah school-house, after he was dismissed by the former directors. The legality of this payment depends upon the power of the board last elected, to reconsider, and reform, and change the doings of their predecessors. The defendant alleges that the action of the directors in 1857 gives great dissatisfaction to the citizens of the township, in discontinuing the Savannah school and dismissing the teacher. And that the people of the township corrected the error of the board, as they had a right to do, at the first opportunity, by electing a board who, in accordance with the wishes of those they represented, reinstated the school and paid the teacher, thus placing all the citizens of the township upon an equality, by paying for the tuition of all the children out of the school fund.

"It will not, we presume, be controverted, that any deliberative body, including a school board, may at any time reconsider, change, modify, or reform their own proceedings. The directors of 1857 certainly had the power to reconsider the resolution dis-

[The Township of Dickinson *v.* Linn.]

missing Mr. Kenyon as a teacher, to reinstate him and to pay him for the time he taught at the instance of the patrons of the school. If the board who passed the resolution of dismissal could repeal and rescind their own resolution, certainly their successors had the same power, for legislators cannot by their legislation bind their successors. The great beauty of our system of self-government consists in the beautiful but effective mode of correcting the error and mistakes of our public servants, by converting them, when the proper time arrives, into private citizens, and supplying their places with those who will correct and reform errors and mistakes, and carry out the views and wishes of those they represent.

"In this aspect of the present case, we consider it very questionable whether there was anything illegal in the payment of Kenyon by the school directors of 1858, for services rendered in 1857, if it was in accordance with the wishes of the citizens of the township that he should be paid, and the directors of 1858 were elected with a special reference to this object, and to relieve those who sent their children to Kenyon from the unjust burden of contributing their due quota to the general fund by taxation, and in addition thereto pay for the tuition of their own children by private contribution.

"But whether the directors who ordered this payment would be liable to the township or school board, in a proper form of action, is not the question now before us. The treasurer was justified in making the payment on the order presented, signed and attested by the proper officers, and you will allow him a credit for the amount thus paid."

To this charge the plaintiff excepted; and a verdict and judgment having been rendered in favour of the defendant for $75.93, the plaintiff removed the cause to this court, and here assigned the same for error.

*Sharpe* and *Watts & Parker,* for the plaintiff in error.

*Todd & Lee,* for the defendant in error.

The opinion of the court was delivered by

LOWRIE, C. J.—A schoolmaster was dismissed by the board of school directors for gross insubordination and disobedience; and this seems to have given rise to a partisan division in the township and in the board, and two annual township elections turned upon it. This is very much to be deplored. The encouragement and promotion of official disobedience is a very bad way of correcting the errors of superior officers. How can the people expect good instruction for their children from an insubordinate teacher, perhaps

himself the leader in the strife that grew out of this disrespect of the school directors ? How can they expect good men to be directors, when their very performance of their duty is made the ground of a general neighbourhood quarrel? How can they expect their children to grow up into orderly citizens, when teachers, schoolmasters, and people, refuse to respect the law ? No doubt, so bad an example as this may do good to others, by being a warning to them; but surely a good example would have been better for all. A school system under popular control will be no blessing to us, if it be so conducted as to beget among the people habits of disregard of their own law. Society is worthless if it has no abiding rule of order.

Undoubtedly, this teacher had no right to be paid out of the public funds, except for the time he was in the public employment; and the directors had no legal authority to pay him; otherwise, they did it to their own wrong, and each director who voted for it is personally liable to the township. They had no right thus to deal with trust funds. They are in no proper sense legislators; but officers under law, and obliged to obey it. Even a majority of the voters of the township could invest them with no authority to set aside the law of their office.

Then, as to the defendant, the treasurer : is he liable for paying the order, as for a mispayment? As director he voted for the misapplication of the money, and as treasurer he paid it; and he is now called upon, as treasurer, to account for it. Can he, as treasurer, shield himself behind himself as director? Can he, as treasurer, take advantage of his own wrongful act, as director, to save himself from liability? May he excuse an unlawful application of public funds, by showing a warrant which he himself unlawfully assisted in issuing? We are very clear that he cannot. Certainly it is true, that he must pay the warrants of the directors, and is not answerable for their errors. Yet, it is also true, that when he, as treasurer, becomes subordinate to himself as director, he can have no moral or legal right to protection as subordinate, by pleading his own unlawful act as superior. When the same man is both superior and subordinate, the maxim *respondeat superior* furnishes no protection to the subordinate. A treasurer cannot claim credit for payment of a warrant illegally issued, if he himself aided in its issue. School directors cannot make law, and have none of the immunities of supreme legislators. Like other trustees, they are answerable for ordinary care and good faith in the performance of their duties. These views sufficiently indicate the error which was committed in the trial.

Judgment reversed, and a new trial awarded.