# CASES

IN THE

# SUPERIOR COURT

OF

## PENNSYLVANIA.

---

### Wolford, Appellant, v. Upper Salford Township School District.

*Public officers—School directors—Contract for supplies—Treasurer of school district—Illegal contract—Act of March 31, 1860, P. L. 382, sec. 66.*

A treasurer of a school district will not be allowed credit for moneys paid to a school director for supplies of coal and wood for the district, although the vouchers for such supplies were issued by the officers of the school board, if it appears that the treasurer had full knowledge that such vouchers were issued in pursuance of an illegal transaction.

Argued Dec. 8, 1910. Appeal, No. 265, Oct. T., 1909, by plaintiff, from order of C. P. Montgomery Co., Oct. Term, 1909, No. 14, dismissing appeal of school treasurer in the matter of Frank D. Wolford, treasurer of the school board of the school district of Upper Salford Township v. School District of Upper Salford Township. Before RICE, P. J., MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Appeal from report of township auditors. Before WEAND, J.

The court dismissed the appeal in an opinion which was as follows:

The appellant is treasurer of the school district. In the

settlement of his accounts the auditors refused him credit for orders and vouchers of the school board, paid by him to Wm. M. Hiltebeitel $123.02 and to Henry Nace $3.00.

The ground of the refusal was because both Mr. Hiltebeitel and Mr. Nace were members of the school board, and as such, could make no contracts or furnish supplies to the board, under sec. 66 of the Act of March 31, 1860, P. L. 382; and sec. 17 of the Act of April 11, 1862, P. L. 471.

The materials furnished were coal and wood.    These are clearly supplies within the meaning of the act.

It is admitted that when he paid the bills, the treasurer knew that the payees were members of the school board. He therefore paid with knowledge that the board had issued orders in payment of contracts expressly forbidden by law.    It was his duty to protect the public and not allow the school district's money to be diverted to unlawful purposes.    There is no fact requiring an issue.

*Error assigned* was order dismissing the appeal.

*Wm. F. Dannehower,* for appellant, cited: Dickinson Twp. v. Linn, 36 Pa. 431; Com. ex rel. v. Joyce, 3 Pa. Superior Ct. 609; Breisch v. Brennan, 15 Phila. 641.

*J. B. Larzelere, Jr.,* for appellees, cited: Coxe's Case, 1 Pa. Dist. Rep. 702; Com. v. Commissioners of Philadelphia County, 2 S. & R. 193; Plains Twp. Auditors' Appointment, 10 Luz. Leg. Reg. 58; Lewis v. Flanaigan, 1 Leg. Rec. Reps. 141; McIntyre Twp. v. Walsh, 137 Pa. 302; People v. Jefferson County Supervisors, 54 N. Y. Supp. 782; State v. Bourne, 86 Minn. 426 (90 N. W. Repr. 1105); Porter v. School Directors, 18 Pa. 144.

OPINION BY HEAD, J., March 3, 1911:

The plaintiff in this case was the treasurer of the school district of Upper Salford township in the county of Montgomery.    Two of the school directors of that district had

entered into contracts with their fellow directors to furnish to the district supplies of coal and wood. Vouchers for the payment to these directors of sums claimed under such contracts were issued by the officers of the board, presented to the treasurer, and by him paid to the two directors named therein. When the auditors of the township came to audit the account of the treasurer, they rejected these vouchers and refused to allow him credit therefor because it appeared, without any dispute, that the treasurer, at and before the time he paid these vouchers, had full knowledge of the facts stated and the purpose for which the vouchers issued. The treasurer appealed to the court of common pleas. A stipulation in the nature of a case stated was prepared and filed showing that there was no issue of fact between the parties, and making it appear affirmatively that the treasurer acted with a full knowledge of what has been stated. Thereupon the learned court below confirmed the report of the auditors and the treasurer takes this appeal.

We do not understand it to be denied that the acts of the two school directors, who thus entered into an arrangement with the board of which they were members to furnish certain school supplies, were violations of sec. 66 of the Act of March 31, 1860, P. L. 382, as well as of sec. 17 of the act of April 11, 1862, P. L. 471. If so, then the acts of these directors, the compensation for which was demanded by these vouchers, were not only plainly forbidden and declared unlawful by public statutes, but were made misdemeanors by the terms of the act first named.

It ought not to be necessary to argue that the public funds of the state, or of any borough or school district created by the state, as one of its subordinate agencies for administrative purposes, could not be lawfully expended to pay public officers for an express violation of the state's laws, much less as the price of a misdemeanor.

It is urged upon us, and in a general sense it is true, that the treasurer of a school district, being but the ap-

pointee of the school directors, is an administrative and not a judicial officer. It would therefore follow, speaking in like general terms, that he is not required at his peril to go behind a voucher, regular on its face and issued by the proper officers, to ascertain the nature of the transaction in which it was issued and pass upon the validity or legality of the conduct of his superiors. In such case he would be and ought to be protected in relying on the presumption that his superiors had acted in good faith and under the law in issuing the warrant which it would then become his duty to pay.

But all of this goes for nothing in the face of his unquestioned admission that he had full knowledge that these vouchers were issued to two of the directors in pursuance of a transaction long ago declared by public law and public policy to be both illegal and immoral. The principle that no man can serve two masters is not a new one, either in law or morals, and we think no authority can be found to support the conclusion that this appellant, with the knowledge he possessed, was justified in paying out the public money which was the fruit of a bargain declared by the law to be illegal.

In Township of Dickinson v. Linn, 36 Pa. 431, the school board had selected one of its own members as its treasurer. The board issued a warrant to pay for the alleged services of one who had been a school teacher but had been dismissed from his office. The treasurer, who was present at the meeting at which the warrant was authorized, and therefore had full knowledge of all the facts, paid the warrant. The auditors allowed the payment and a taxpayer appealed. The court below held that the treasurer was protected in paying the voucher because he was merely a ministerial officer, but the Supreme Court reversed the judgment. Whilst it is true that the decision turned largely on the proposition that the treasurer was himself a director and thus aided in bringing about the illegal appropriation of the public money, the court said: "A treasurer cannot claim credit for payment of a war-

rant illegally issued, if he himself aided in its issue." The vulnerable spot in the treasurer's case in that instance was the fact that his act as treasurer was connected back with the illegal issue of the warrant by the fact that he was present as a member of the board at the time it was issued. Here his admitted knowledge that the voucher was illegally issued puts him in substantially the same position, and we can find nothing in the language of the Supreme Court in the case cited to indicate to us that the judgment would have been different had the facts been precisely what the record now discloses. As to the case of Com. ex rel. v. Joyce, 3 Pa. Superior Ct. 609, we may remark that the record did not present the question now before us, but the language of the opinion in that case clearly indicates that township auditors are fully justified in surcharging the treasurer of the school district with funds paid out by him upon warrants illegally issued if he be in a position where the illegality of such issue can be fairly visited upon him.

It may be true, as is urged upon us, that the parties involved in the transaction exhibited in this record were not conscious of wrongdoing. Even if that be conceded, it seems rather a sad commentary on existing conditions that while the state is annually appropriating millions of dollars of the public money to advance and develop our system of common schools, school directors and the custodians of these public moneys should plead ignorance of the wrong involved in doing an act condemned by the public conscience and the statutes of the state as a prolific source of corruption and waste of the public money.

Judgment affirmed.